No. 13,594.

MRS. L. C. COLVIN vs. D. A. JOHNSTON, SHERIFF ET AL.

| 104 | 655 |
| 107 | 558 |
| 104 | 655 |
| 117 | ·345 |
| 104 | 655 |
| 123 | 416 |

SYLLABUS.

1. In case of disagreement in a pending cause, so.that there cannot be a concurrence of two judges of the Court of Appeal in the decision thereof, the court may appoint a district judge, or a lawyer, having the qualifications of a judge of the court, to sit in the case.

2. The essentials to the validity of a *dation en paiement* by the husband to the wife, in satisfaction of her paraphernal rights, are the just and honest claim of the wife against the husband, the just proportion of the value of the thing given to the amount of the wife's claim, and the delivery to the wife of that which is the subject of the *dation*.

3. Property encumbered by mortgage in favor of others may be the subject of a *dation* to the wife by the husband in satisfaction of her paraphernal claims, provided she does not assume or make herself responsible for the mortgage debts.

4. And in determining the value of the property so transferred, it is competent for the appraisers to take into consideration the existing encumbrances, and appraise the property, for the purpose of the *dation*, at whatever it may be worth over and above the amount of the mortgages.

5. Under such circumstances, where the mortgages equal or exceed the value of the property, a nominal valuation, over and above the encumbrances, put upon the property could hardly be denounced as a "vile" price.

I N RE Joubert Bros. *et als.,* Applying for *Certiorari* or Writ of Review, to the Court of Appeals, Second Circuit, State of Louisiana.

---

*Andrew Augustus Gunby* for Joubert Bros. and Thompson, Wilson & Co., Defendants, Applicants.

---

*Hudson, Potts & Bernstein* for Plaintiff, Respondent. .

---

The opinion of the court was delivered by

BLANCHARD, J. This cause was decided by the District Court in favor of the plaintiff, whereupon an appeal was prosecuted to the Court of Appeals, Second Circuit.

The judges of the latter tribunal divided in opinion—Judge J. M. Kennedy holding the judgment appealed from to be erroneous, while Judge E. C. Montgomery considered the same to be correct.

In this condition of affairs, the judges decided on calling in a lawyer of the requisite qualifications to sit on the case. They, accordingly, appointed Percy Sandel, Esq., of the Monroe bar, as judge *ad hoc.*

Argument was had before the three and on consideration Judges Montgomery and Sandel concurred in a decree affirming the judgment below.

Judge Kennedy dissented.

In the application made here by defendants for the writ of review, it is objected that the judges of the Court of Appeals, being unable to agree, should have certified the case to this tribunal, and that it was error to call in a lawyer to sit in the case.

This objection is untenable.

Article 102 of the Constitution is direct authority for the appointment of a lawyer or a district judge to sit in a cause as to which the judges of the Court of Appeals have disagreed.

Plaintiff, in turn, objects to the consideration of the cause on the writ of review, for the reason that no application for a rehearing was filed in the Court of Appeals. In this connection, her counsel directs attention to the amendment to Rule 12 of this court, which reads as follows:—

"Hereafter no application for the writ of review in any case will be considered until it appears from the papers filed that an application for rehearing has been made in the Court of Appeals, considered and overruled."

It not appearing from the papers of the case that an application for rehearing was filed and overruled, this would suffice to recall the writ as having inadvertently issued, but for the fact that the amendment to Rule 12, above quoted, was not adopted until June 18, 1900. This was *after* the judgment of the Court of Appeals herein was rendered, after notification had been given by the attorney of the applicants of intention to apply for the writ, and after, or on the very day, the application itself was mailed to the clerk of this court. We find the application was received here and filed June 19, 1900.

So that when the attorney prepared and sent forward his application the amendment had not been adopted, or, at least, had not yet become operative.

With regard to the merits of the case, our review of the same has led to the conclusion, both on the facts and law, that the controversy was properly determined by the Court of Appeals.

The opinion of the court, prepared by the judge *ad hoc*, is so clear in its statement and so accurate in its appreciation and application of the law governing the case that we adopt it as our own, as follows:—

"This is an injunction suit instituted by Mrs. L. C. Colvin, wife of J. B. Colvin, to restrain the sale of twenty-nine bales of cotton, alleged to be worth forty dollars per bale, and three thousand bushels of cotton seed, alleged to be worth four hundred dollars, seized by the sheriff of the Parish of Ouachita as the property of plaintiff's husband under writ of *fi. fa.* issued in execution of judgments against him in suits Nos. 4188 and 4189, styled respectively Joubert Bros. vs. J. B. Colvin, and Thompson, Wilson & Co. vs. J. B. Colvin, on the docket of the Fifth District Court of the Parish of Ouachita.

. She avers that all of said property and crops were raised by her during the current year on the plantations cultivated by her, and are her separate and paraphernal property and in no wise responsible for the debts of her said husband, J. B. Colvin, and that she is regularly and legally separated in property from her said husband by judgment of the Fifth District Court of the Parish of Ouachita, and is conducting, operating and administering her own affairs entirely free from the administration and control of her husband, and that the seizure and sale of her property for the debts of her husband is illegal and mali-

cious, and will cause her irreparable injury, and that an injunction is necessary to protect her rights in the premises, and that she has been damaged one thousand dollars by said illegal seizure, etc.

Defendants answering, aver that they are judgment creditors of J. B. Colvin, and that writs of *fi. fa.* were regularly issued on their said judgments and were executed by the sheriff by seizing twenty-nine bales of cotton and fifty tons of cotton seed, which constituted a part of the crop raised and produced by J. B. Colvin on his plantations during the year 1899, and that said property belongs to said J. B. Colvin, and was in his possession at the time of its seizure, and that J. B. Colvin is a practical farmer and owns two plantations in the Parish of Ouachita which are his individual property, and are cultivated and managed by him in person; but for the fraudulent purpose of screening said crops from the pursuit of his just creditors, he pretends to run said plantations in the name of his wife; that the pretended title of plaintiff is a pure fiction and an absolute nullity; that she could not and did not lease the plantations belonging to her husband; that she did not and could not employ his services; that the crops made were the product of the husband's individual skill, industry and work, and of his separate property, and that the wife has no interest whatever in said property. Avers and prays for damages.

The testimony shows that on the 5th day of October, 1898, Mrs. L. C. Colvin instituted suit against her husband, J. B. Colvin, alleging his insolvency, and praying for judgment against him for certain of her paraphernal funds had, received and used by him in his own business and for his own account, and for a dissolution of the community and a separation of property between her and her said husband.

Judgment was rendered in her favor on November 25th, 1898, against her husband, J. B. Colvin, for fifteen hundred dollars and decreeing a dissolution of the community and a separation of the property between her and her said husband and authorizing her to conduct and manage her own affairs.

On March 20th, 1899, J. B. Colvin, by a *dation en paiement,* transferred to his wife, Mrs. L. C. Colvin, in partial satisfaction of her paraphernal claims against him, the two plantations, together with fifteen mules attached thereto and immovable by destination, and all farming implements thereon, on, which the crops herein seized were produced during the year 1899.

This act of *dation en paiement* was filed for record and duly recorded in the notarial records of the parish on the 4th day of April, 1899.

The seizure of the property described in plaintiff's petition was made on the 24th day of November, 1899, and was a part and parcel of the crops produced on the plantations transferred by J. B. Colvin to his wife as aforesaid.

It is a well settled principle in our jurisprudence that the law favors restitution to the wife and looks with favor upon the efforts of the husband to secure her just and honest claims against him.

The fact that the husband is insolvent and embarrassed, that he is pursued by creditors by harsh remedies, cannot be invoked to destroy the validity of the transaction. The rules governing the revocatory action do not apply to the *dation en paiement* by the husband to the wife in satisfaction of her just paraphernal claims.

This well settled doctrine dispenses with a discussion of the fraudulent intention of the parties to the *dation en paiement,* and reduces the issues in this case to a determination of the validity and legality of the *dation* itself.

If it be valid and legal the intention of the parties thereto is irrelevant and immaterial. It it be null and void, all rights under and by virtue of it are without foundation and must fall.

The essentials to the validity of a *dation en paiement* by the husband to the wife are the just and honest claim of the wife against the husband, the just proportion of the value of the thing given to the amount of the wife's claim, and the delivery to the wife of the thing given to her in satisfaction of her debt.

The contention of the defendants in this case is that the price stipulated in the *dation en paiement* is vile, that it is a mere nominal price, that it is inadequate and out of proportion to the real value of the property transferred.

The testimony in regard to the value of the property, as is that in regard to the amount of the special and judicial mortgages existing against the property, is very unsatisfactory. However, it is admitted that the property is not worth the amount of the special and judicial mortgages existing against it at the time of the transfer to Mrs. Colvin.

The only evidence in the record as to the value of the property is that of L. D. McLain, who says the property is worth from sixteen to twenty thousand dollars, and his testimony seems to refer exclusively to the value of the land.

Mrs. Colvin acquired the property subject to (but not assuming) all existing special and judicial mortgages, which are admitted to be more

than the value of the entire property. The price stipulated in the *dation en paiement* is one hundred dollars.

The question is now reduced to this, is this price, under the circumstances and conditions of this case, vile, inadequate and out of proportion to the real value of the thing given?

In order to determine this question, it will be necessary to decide just what was acquired by Mrs. Colvin. It is evident, that if she acquired anything, she acquired the legal title to the property subject to existing charges and encumbrances with which the property is burdened, and which amount to more than the real value of the property.

What, then, is the value of this encumbered legal title? What is it worth, and what is its market value?

It would be worth substantially nothing were it not for the fact that it carries with it the right of its owner to occupy, possess, enjoy and cultivate said property for her own use, benefit and profit, which may, or may not, be valuable. The legal title and its accessory right 'of occupancy, possession and use is subject to be defeated at any time by any special or judicial mortgage creditor by foreclosure, or by hypothecary proceedings against the property.

If the various special and judicial mortgage creditors do not proceed against the property, and Mrs. Colvin were allowed to cultivate and use the property, her legal title is valuable. On the contrary, if these various mortgage creditors had taken proceedings against the property without delay, her legal title would have been absolutely worthless.

Considering all things and in the light of all the surrounding circumstances, Mrs. Colvin's purchase was of very doubtful and uncertain value and subject to exceedingly precarious conditions. We are not, therefore, prepared to say that it was worth more than one hundred dollars, the price stipulated in the *dation en paiement*, or that said price is vile, inadequate and out of proportion to the value of the thing given, and especially are we unwilling to arrive at such a conclusion on considering the appraisement made at the time of the *dation*, and in the absence of proof to the contrary.

It will be assumed that the property transferred by the husband to the wife is fairly appraised in the act of transfer, until the contrary is shown by the party attacking the transfer. Lehman, Abraham & Co. vs. Levy, 30 La. Ann. 746.

Defendants' counsel urges the nullity of the *dation en paiement* for another reason, which is, that the wife cannot acquire by *dation en paiement* from the husband property which the latter has encumbered

with mortgages because it is, in effect, the wife assuming the debts of the husband, which is contrary to prohibitory law, citing Article 2398 of the C. C. That Article is as follows:—

"The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him for debts contracted by him before or during the marriage."

Defendants' counsel cites no authority to sustain his position, but relies on the general principles of the law.

It is settled beyond dispute by a long line of precedents that the wife is not in any case permitted to bind herself, or her property, either with or for her husband, for debts due by him before or after marriage. It is also well settled that a *dation en paiement* by the husband to the wife, whereby she agrees and assumes to pay debts or mortgages due by the husband as a part of the consideration and price stipulated in the *dation en paiement,* is a contract not authorized by law and does not pass the property from the husband to the wife; and that such a contract is null and void and of no effect.

But we know of no case in which it is held that the husband cannot transfer by *dation en paiement* to the wife encumbered property, if the wife does not assume or in any manner become responsible for the debts of her husband. On the contrary, in the case of Levy, Executrix, vs. Morgan *et als.,* 33 La. Ann. 532, it was expressly held:—

"There is no legal objection to the husband's transferring to the wife in payment of her paraphernal rights, property encumbered with a mortgage, because she takes the property subject to the mortgage, without assuming the debt of her husband."

That case is very similar to the instant one and seems to decide all questions raised by defendants' counsel adversely to his views.

It is said, however, that this case stands alone and is in conflict with the general and elementary principles of the law, and previous decisions on this subject, and should not be followed.

There does not appear to be a conflict. There is a wide distinction between the cases in which the wife acquires the property *cum onere,* though not making herself personally liable, and those cases, in which she assumes to pay, as her own, the debts of her husband.

The reason for this is evident. In the first, she takes the property with the privilege of surrendering it in the event of foreclosure, or hypothecary action, without incurring any personal liability should the property not realize sufficient to satisfy the encumbrances; in the

second, not only is the property liable for the payment of the debt, but the wife undertakes to become personally liable, and in case the property does not realize sufficient to satisfy the debt, she stipulates that she and her separate estate would be bound for and subjected to the payment of the deficiency.

In the first, the wife does not bind herself or her property; in the second, she does; and it is the second case only which is contrary to and prohibited by law.

It is contended, further, that the encumbrances should not have been considered by the appraisers in determining the value of the property. This question is also settled by the case of Levy, Ex. vs. Morgan et als., 33 La. Ann. 535, in which the court say:—

"Nor was it improper in the appraisers of the land to take into consideration the encumbrance on the land in making their valuation of it preparatory to its transfer by Morgan to his wife. The question was, what was the property worth to the wife, who proposed taking it in satisfaction of her debt. To ascertain its real worth to her, and what she could afford to allow for it, the encumbrance upon it should have been taken into consideration. It was quite certain that whatever encumbrance existed, it would not be discharged by the insolvent husband; and the actual value of the land was only what it was worth over and above the prior mortgage. Nor can it be said that this involved the question, raised by plaintiff's counsel, of the right of the wife to assume the husband's debt, for taking the land subject to the mortgage, even with the expectation of having it to pay, implied no assumption of the debt."

This reasoning appears to be sound. There is no practical method of determining the value of encumbered property to an intended purchaser other than to deduct from the actual value of the property the amount of the encumbrances, and we know of no legal reason why a different rule should be used because the wife is the purchaser.

Defendants contend that the *dation en paiement* is void because it is speculative and an aleatory contract between the husband and wife, which is contrary to the policy of the law, and that the law does not permit the wife to involve herself.

This is a well settled principle, but it has no application in this case. Mrs. Colvin has made no investment beyond her separate and paraphernal means, nor bound herself for anything over and above the purchase price stipulated in the *dation en paiement*, which she satisfied in full without exhausting her paraphernal means.

She bought certain property at a certain fixed and appraised value and paid the price at the time of purchase.

We know of no case in which such a transaction has been declared

illegal or contrary to the policy of the law. On the contrary, it has always been held that the wife has the right to invest her paraphernal funds and to acquire property as the result of such investment, and such transactions have always been sustained, where it is shown that the wife had sufficient paraphernal funds with which to make the purchase, and which are ample to enable her to make the new acquisition. See Miller vs. Hardy, Sheriff, *et als.,* 33 La. Ann. 160, and authorities there cited.

Defendants contend that the property seized is the result of the work, skill, management and industry of J. B. Colvin, the husband, and that it is, therefore, community property and liable to seizure and sale for the debts of the husband. It is well settled that the wife may administer her paraphernal property through the agency of the husband, and that she may avail herself of his assistance if he is willing to render it, provided he act under her authority and merely as her proclaimed agent. Such acts, though performed by the husband, are the acts of the wife. *"Qui facit per alium, facit per se."*

She has all the power of a *femme sole* in regard to the management of her separate property, including the power to employ agents.

See Barataria vs. Field, 17 L. 426; Jordan vs. Anderson, 29 La. Ann. 749; Miller vs. Hardy, Sheriff, *et als.,* 33 La. Ann. 160.

The testimony establishes that the husband, J. B. Colvin, acted as the agent of his wife, that all contracts for supplies were made by Mrs. Colvin and in her name, that she pledged the crop to secure same, that the business was conducted in her name, and that in all transactions by her husband, he acted as her proclaimed agent, and was dealt with as her agent.

The *dation en paiement* being valid, it transferred the property to Mrs. Colvin with all the rights of ownership, and having operated and cultivated the plantations for her own use and benefit, the fruits and revenues thereof are her separate and paraphernal property, and in no was responsible for the debts of J. B. Colvin, her husband."

For the reasons given it is ordered that the judgment of the District Court, affirmed by the decree of the Court of Appeals, do stand undisturbed—costs of all the courts to be borne by defendants.