This litigation was commenced when Mrs. Lillian Fabacher Trorlicht presented to the State Board of Tax Appeals a petition in which she alleged that she had received from the Collector of Revenue of the State of Louisiana a notice of deficiency in which it was stated that there had been found a deficiency in her income taxes for the years 1938 and 1939 amounting to $900.15 and in which petition she alleged also that the finding of this deficiency was incorrect. She prayed that the Board of Tax Appeals determine that no further tax was due from her for the said years 1938 and 1939. The Board of Tax Appeals after the hearing ruled that there was no deficiency.
Thereupon the Collector of Revenue, in accordance with the provisions of Sections 19 and 20 of Act 299 of 1942, filed its petition for review in the Civil District Court for the Parish of Orleans praying that the decision of the Board of Tax Appeals be annulled and that there be judgment upholding the deficiency claimed to be due from the taxpayer. In the Civil District Court there was judgment affirming the decision of the Board of Tax Appeals. From this judgment the Collector of Revenue appealed to the Supreme Court of Louisiana. That court has transferred the appeal to this court. See Trorlicht v. Collector of Revenue, No. 37831 of the docket of the Supreme Court, 24 So.2d 366. Thus the matter is now before us for consideration.
The dispute arises from the fact that the Collector contends that the taxpayer should be taxed upon all of the fruits of certain separate property owned by her but which fruits were actually turned over to her husband for the use of the community which existed between the taxpayer and her said husband, whereas the taxpayer contends that she, as partner in community, should be taxed only on one-half of those fruits.
The facts are not in dispute. It is agreed "that the facts in this matter as to the sources of income of the taxpayer are correctly set out in the taxpayer's petition."
In addition to the stipulation above quoted concerning the sources of income, the following admissions are found in the record:
"It is further admitted that the taxpayer, during the years in question was, herself, a director of Jackson Brewing Company and received a director's fee for attending the meetings of the Jackson Brewing Company.
"It is further admitted that the taxpayer, and her husband would testify, that the taxpayer consults her husband generally about the affairs of Jackson Brewing Company and is guided largely by his views in determining her position with respect to her investment in the company, and particularly that it was upon his advice that she was unwilling to agree to a sale of the stock of Jackson Brewing Company which was proposed in the year 1938.
"It is further admitted that the taxpayer, and her husband would testify, that the taxpayer consults her husband about other investments, and that beginning with the latter part of 1938 all income from all of the taxpayer's investments has come exclusively through the husband's account, and the dividends are paid directly to him by virtue of dividend orders which the taxpayer has signed.
"It is further admitted, that the taxpayer and her husband would testify that all of the income from the taxpayer's property *Page 549 
was used for the support of the community, and that the community had not other means, of any sort, and that it was the taxpayer's intention, at all times, that the property should be administered for the community's benefit and not for her separate benefit.
"It is further admitted that the Jackson Brewing Company stock not held in trust by the Whitney Bank was subject to the trust of an agreement by the taxpayer with her brothers and sisters, which agreement gave her brother, Lawrence Fabacher, the right to vote said stock for the election of directors but not for any other purposes.
"It is further admitted that the coupons on the notes and bonds of the Jackson Brewing Company belonging to the taxpayer were cut by the taxpayer and her husband and the securities were kept in a bank box which, during and since the latter part of December, 1938, has been in the joint names of the taxpayer's husband and the taxpayer."
The allegations of plaintiff's petition as to the sources of her income and which allegations are admittedly true as we have set forth above, show that that income was received from the following sources during the years 1938 and 1939: Mrs. Trorlicht was the beneficiary of two trusts which produced for the year 1938, $6,410.48 and for the year 1939, $15,585.60. Mrs. Trorlicht also received dividends as owner of certain shares of stock of Jackson Brewing Company which amounted to $7,320 for the year 1938 and $10,324 for the year 1939, and she also received, as owner or holder of certain bonds and notes of the Jackson Brewing Company, $1,030 for the year 1938 and $750 for the year 1939. It thus appears that the income in question came from three sources — (1) proceeds of two trusts over which no control could be exercised by either the taxpayer or her husband; (2) proceeds of certain stocks not held in any formal trust but subject to an agreement under which the taxpayer and her brothers and sisters authorized one of them, Lawrence Fabacher, to vote such stock for the election of directors but for no other purpose, and (3) interest coupons or interest on notes of Jackson Brewing Company.
The record is a little confusing as to whether it is the stock which is subject to the formal trust on which Mr. Fabacher is allowed to vote for the election of directors or whether it is only the other stock which is subject only to the informal agreement among the brothers and sisters which he is permitted to vote at the election for directors. The conclusion to which we have come makes it unnecessary that we obtain clarification on that uncertainty.
The theory upon which Mrs. Trorlicht bases her claim is stated in her brief as follows: "* * * It was the taxpayer's intention at all times that the property should be administered for the community's benefit and not for her separate benefit, and the income in question was in fact used for the benefit of the community in maintaining and supporting the family home, where the plaintiff and her husband both resided."
The contention of the Collector of Revenue, on the other hand, is that the income did not fall into the community regardless of what may have been the intention of the taxpayer and regardless of the purpose to which the said income may have been devoted because the separate property of the wife by which the income was produced was not administered by the husband either alone or indifferently with the wife.
The Board of Tax Appeals based its decision that the fruits should be treated as community property on its interpretation of the pertinent articles of our Civil Code. The Board held that those articles should be interpreted as providing that where the husband does not administer the wife's separate property, nevertheless the fruits thereof fall into the community unless the administration was for her separate benefit and not for the benefit of the community. We note the following from the decision of that Board: "* * * in order to escape the applicability of the general rule that all income accruing during marriage, whatever its source, belongs to the community, it must be shown not merely that the wife and not the husband is administering the wife's separate property, but that the wife is administering her separate property for her own use and benefit and not for the benefit of the community."
We interpret that as a holding that the wife's intention as to the use of the fruits should determine the question of whether those fruits do or do not fall into the community.
The District Court, on the other hand, did not base its conclusion on what may or may not have been the intention of the wife but rather on the fact that the fruits of the separate property were actually turned over to and used by the community. We *Page 550 
note the following from the opinion of the District Court: "* * * under the law as established by our highest court, the income from the wife's separate property falls within the community even though the property is not administered by the husband, because, as stated by the Honorable Supreme Court, the question is not so much by whom the property was physically managed as it is for whose benefit was it managed. The agreed statement of facts is conclusive on this subject. In the instant case the income of the wife was used for the benefit of the community; therefore there is no error in the decision of the Board of Tax Appeals, and its judgment will therefore be affirmed."
That Court also said: "In order to find for the state it would have to be shown as a fact that the wife was administering her own property, under her sole and separate control and authority, and that she made the revenue and income derived therefrom her own."
We find ourselves unable to accept either of these theories. We cannot see in the pertinent articles of our Civil Code anything which seems to us to authorize the conclusion that as a matter of law the question of whether or not the fruits of the wife's separate property fall into the community may be made to depend either on the intention of the wife as to what she wants done with those fruits or on the use to which those fruits may, in fact, have been devoted. The pertinent codal articles are those which provide for the creation of and for what shall fall into the community, and particularly Articles 2385, 2386 and 2402 of the Civil Code. The first of these reads as follows: "2385. Wife failing to administer paraphernal property — Management by husband. — The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband."
The second, Article 2386, was amended in 1944 by Section 1 of Act 286, but prior to that time the part which is pertinent here read as follows: "Fruits of paraphernal property — Ownership. — When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community of gains. * * *"
That part of Article 2402 which is applicable here reads as follows: "2402. Property forming community — Personal injuries to wife. — This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, * * *."
[1] There is certainly nothing in any of these articles which offers a basis for the suggestion that the intention of the wife as to what she wants done with the fruits of her separate property or that the actual use to which those fruits may be devoted shall have any controlling effect on the question of whether, as a matter of law, those fruits fall into the community.
On the contrary, the articles we think clearly indicate that it was the purpose of the redactors to make the question depend on whether the husband had a hand in the management or administration of the separate property of the wife.
It is true that there are certain decisions of our Supreme Court of which Miller v. Handy, 33 La. Ann. 160, is typical, which, unless carefully analyzed, might be pointed to as indicating or intimating that the purpose for which the fruits are to be devoted or to which they may have been devoted, may be taken into consideration. But while in that case and in the others too there is discussed the effect of the wife's intention as to the use to which those fruits are to be put, in none of them was it held that intention may be considered in determining whether the fruits should fall into the community as a matter of law. In each of those cases all that the court actually held was that when it is necessary to determine whether an administration by the husband should be considered as an administration by him as agent for the wife or as an administration by him as head of the community, the intention of the wife or the use to which the fruits may have been put may be considered.
[2, 3] It must be remembered that the wife may select her husband as her agent to administer her separate property and that if she does so the fruits of that separate property fall into her separate estate. On the other hand, she may allow her husband — not as her agent, but as head of the community — to manage her separate property. If she does this then the fruits fall into the community. Miller v. Handy, supra, and the other cases relied on are authority only for the view that if there is room for doubt as to whether in such a situation the husband *Page 551 
is administering as agent for the wife or as head of the community, then the wife's intention as to the use of the fruits or the actual use to which the fruits may have been put may be considered in an effort to resolve this doubt.
In Bank of Coushatta v. Coats et al., 170 La. 163,127 So. 587, it was merely recognized that, as provided in Civil Code Article 2385, where the administration of the wife's separate property is not by the wife separate and alone from her husband, there is a presumption that that separate property is under the administration of the husband.
[4] Here the facts show that the husband did not administer either separately and alone or indifferently with the wife. We say this because we think that the mere clipping of coupons from bonds or the assisting of the wife in going to the bank box, or the giving of advice now and then, does not constitute such an administration by the husband as is contemplated by the Code. In Dodd et al. v. Succession of Orillion, 14 La. Ann. 68, the Supreme Court held that a husband could not be said to have administered his wife's separate property merely because he was consulted as to crops, settlement of accounts and other such matters. "The fact that he was consulted by Mrs. Orillion's constituted agent, as to the crops, settlement of accounts, etc., subject always to her ratification, does not change the character of this administration. It was an administration of the wife, and not of the husband." See also Lazard v. Commissioner of Internal Revenue, 5 Cir., 153 F.2d 348.
[5] Counsel for Mrs. Trorlicht point to three facts which they say should be considered: the first is that in 1825, when the pertinent articles were written into our Code in substantially the form in which they were until 1944, such corporate investments as stocks and bonds, which require practically no individual administration, were practically unknown and that trusts were entirely unknown and they say that therefore the redactors of the Code, who were familiar only with such investments as "agricultural lands and mines, urban property and money which could be loaned", gave consideration only to investments of such types as those. The argument is that had they considered such forms of property as stocks and bonds which require little administration and trusts which cannot be administered except by the trustee, they would have provided that since the husband could not administer such property, the fruits should arbitrarily pass into the community. We see no reason to assume that the framers of the Code would have so provided had they anticipated such investments, and we see even less right in the courts to do what the framers might have done but did not do. We have already pointed out that it seems to us that in providing that the fruits of the wife's separate property, administered by the husband, should fall into the community, the framers of the Code realized that those fruits were the result, to some extent, of the husband's efforts and that therefore he, as one of the partners in the community, should be allowed to benefit by his efforts.
[6] The second fact to which counsel point is that the Legislature in 1944, in Section 1 of Act 286, rewrote Article 2386 of the Code and provided that in order that the wife retain separately to herself the fruits of her separate property, she must, in a formal instrument, written and registered, declare "that she reserves all of such fruits for her own separate use and benefit * * *" and must therein announce "her intention to administer such property separately and alone." We attach no significance to the amendment so far as the decision in this case is concerned. Of course it cannot be given retrospective effect. It seems to us to evidence nothing more than a realization by the legislators of the fact that there may often be doubt as to how and by whom a wife's separate estate is administered and possibly a realization of the fact that in all fairness the fruits of a wife's separate property should go to the community unless she expressly declares that she does not desire this result.
[7] The third fact to which counsel point is what they seem to think is the inequality in the provisions of the Code that all of the fruits of the husband's separate property fall into the community whereas in the case of the wife the fruits fall into the community only if the husband has had a hand in the administration of the separate property. We shall not enter into a discussion of the wisdom or the fairness of these provisions. All that we can say is that it is obvious that the framers of the Code did just what counsel complain of. If there is anything unfair in the articles on the subject we are powerless to remove the inequality. *Page 552 
We think that the record does not show that the husband administered the wife's separate property alone or indifferently with his wife and the necessary conclusion is that the fruits of that separate property fall into the wife's separate estate and do not fall into the community.
Consequently, the judgment appealed from must be reversed.
For the reasons assigned, the judgment appealed from, affirming the decision of the Board of Tax Appeals, is annulled, avoided and reversed, the decision of said Board of Tax Appeals is likewise reversed and it is now ordered, adjudged and decreed that the deficiency in the income taxes of Mrs. Lillian Fabacher Trorlicht for the calendar years 1938 and 1939, as ascertained by the Collector of Revenue for the State of Louisiana, be and it is upheld and approved and the petition of Mrs. Lillian Fabacher Trorlicht to the Board of Tax Appeals for a re-determination of the deficiency set forth by the Collector of Revenue in his notice of deficiency of September 24, 1942, be dismissed at her cost.
Reversed.