99 So.2d 348

Lewis C. SLATER, Administrator of the Succession of Charles E. Bynum et al.

v.

Mrs. Elizabeth Schulze CULPEPPER, as Executrix of the Succession of Mrs. Mary Isabella Conner Bynum et al.

No. 43140.

April 1, 1957.

On Rehearing Nov. 12, 1957.

Further Rehearing Denied Jan. 9, 1958.

Thompson, Thompson & Sparks, Monroe, White, Holloman & White, Alexandria, for defendants-appellants.

John F. McCormick, West Monroe, Madison, Madison, Files & 'Shell, Hayes, Harkey & Smith, Monroe for plaintiffs-appellees.

HAMITER, Justice.

Mrs. Bella Conner Bynum, wife of Charles E. Bynum, departed this life on July 24, 1948. Following probate of her will and qualifying of the testamentary executrix (Mrs. Elizabeth Schulze Culpepper) an inventory of the property of her succession was taken. In due course most of such property was sold, on an order of court, for liquidation purposes.

Charles E. Bynum, the husband, died on March 7, 1950, being survived only by collateral heirs. Thereafter, these heirs, along with Lewis C. Slater (the duly appointed administrator of his succession), instituted this suit against the legatees of

Mrs. Bella Conner Bynum and her testamentary executrix to recover one-half the value of 36 certain items of property which were listed in the succession of Mrs. Bynum as belonging to her separate estate.

The theory of the action is that such items were owned by the community of acquets and gains that formerly existed between Mr. and Mrs. Bynum. The items (for convenience we shall refer to them hereinafter by the numbers used by the trial judge) consisted of 34 government bonds (items 1 to 34, inclusive), a certificate for 50 shares of stock in the Peoples Homestead and Savings Association (item 35), and cash on deposit in the Central Savings Bank and Trust Company (item 36).

In their answer the defendants generally denied the allegations of the petition. In the alternative they averred that plaintiffs were indebted unto them in the sum of $364,306.43 and they demanded restitution of Mrs. Bynum's separate funds in that amount which, allegedly, were used by Mr. Bynum (and not accounted for) toward the enrichment of the community and of his separate estate.

After a lengthy trial, from which a voluminous record resulted, the district judge decreed that items 1, 2,·3, 20, 21, 22, 23, 24, 33 and 34 were the separate property of Mrs. Bynum, plaintiffs' attorneys having conceded after submission of the case (as is shown by the judge's well considered written reasons for judgment) that they were purchased with Mrs. Bynum's separate funds. Further, he held that the remainder of the items in dispute belonged to· the community formerly existing between: Mr. and Mrs. Bynum and, consequently, he· rendered judgment in favor of plaintiffs. for one-half of their value, together with: legal interest thereon from judicial demand. The alternative demand of defendants was, rejected in its entirety.

From the judgment the defendants are appealing.

Acquiescing in the judgment as to the items decreed to be separate property, plaintiffs have filed an answer to defendants'· appeal in which they urge that they should have been awarded interest on the value of· the bonds at the coupon rate from the date· · of death of Mrs. Bynum (1948) until judicial demand.

As stated in the comparatively recent case of Succession of Hemenway, 228 La. 572, 83 So.2d 377, 380, "Property acquired' by either the husband or wife during the existence of the community of acquets and gains is presumed to belong to the community. Anyone claiming and alleging that it does not so belong must prove his claim· clearly and with legal certainty. LSA–C.C. Articles 2402 and 2405; Succession of Manning, 150 La. 1008, 91 So. 435; Montgomery v. Bouanchaud, 179 La. 312, 154 So. 8; Succession of Land, 212 La. 103, 31 So.2d' 609; Cameron v. Rowland, 215 La. 177,.

40 So.2d 1 and Succession of Schnitter, 220 La. 323, 56 So.2d 563." Here, it is undisputed that all of the property possessed by Mrs. Bynum at the time of her death had been acquired during her marriage with Mr. Bynum and while their community of acquets and gains existed. Accordingly, the presumption is that it belonged to the community, and these defendants carry the burden of establishing its separate character for which they are contending.

The trial judge concluded that there was no evidence adduced in proof of the source of the funds used in the purchasing of items 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 25. After a thorough and careful consideration of the entire record. we agree with that conclusion. True, some of the interest on such bonds was deposited in Mrs. Bynum's bank account (some was also deposited in Mr. Bynum's account); but that circumstance alone would not overcome the presumption that such items were community, particularly since (as will hereinafter be shown) substantial sums that were admittedly community were likewise deposited in Mrs. Bynum's account. These items, therefore, belonged to the community.

Next we consider item 36—a cash balance of $22,183.57 in the account of Mrs. Bynum at the Central Savings Bank & Trust Company. For many years prior to the opening of that account, which occurred in the early part of 1938, the in-

come of the Bynums had been deposited in the name of Mr. Bynum at such bank. It included revenues from Mrs. Bynum's one-fourth separate interest in the T. N. and N. E. Conner Estates which she had inherited (they were her mother and father) and also those from a like interest which the community had purchased from other heirs. Within two months after Mrs. Bynum's account was commenced (in February and March, 1938) there was transferred to it from Mr. Bynum's account, through several deposits, the sum of $46,167.90 (a total of $52,167.90 less a withdrawal of $6000). Notations on the deposit slips, along with other memoranda, indicate that the transfers were intended to be in restitution of Mrs. Bynum's separate revenues from the Conner properties. Thereafter certain bonds and time deposits were acquired with checks (in the amounts of $30,388.96, $5000 and $10,000) drawn on Mrs. Bynum's account, the time deposits later being used to purchase additional bonds. These are the bonds which plaintiffs concede, and the district court held, were Mrs. Bynum's separate property, the funds used in acquiring them being directly traceable to revenues from her separate interest in the Conner Estates. And as a result of the mentioned withdrawals there was left in Mrs. Bynum's account only $2,786.44.

While the bank account of Mrs. Bynum commenced as a predominantly separate

one the record reveals that it did not long remain so. Following the withdrawal of the large sums above referred to numerous substantial deposits of both community and separate funds were made therein. In addition to her separate revenues (from bonds, interest in Conner Estates, and certain properties left her by a predeceased son and stepdaughter), the account received deposits of revenues from community bonds and other community property, monthly payments made to Mr. Bynum as an officer of the Mary Goss Charities organization, and considerable money from unidentifiable sources which presumably belonged to the community.

With particular reference to the revenues produced by Mrs. Bynum's separate property during the four year period from and after the effective date of Act 286 of 1944 (until her death in 1948), and which were deposited in her account, they must be treated as community funds. That statute, amendatory of Revised Civil Code Article 2386, in part recites: "The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her in-

tention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled." The written declaration thus required was never executed and recorded by Mrs. Bynum. The power of attorney given by her in 1940 in favor of Mrs. Elizabeth Schulze Culpepper, relied on by defendants as satisfying such requirement, was not the instrument contemplated by the statute. It merely authorized the appointed agent to collect rents from the Conner properties.

For a period of four years from and after the effective date of Act 286 of 1944, therefore, virtually all revenues deposited in Mrs. Bynum's account were community funds. This being true, and in view of the substantial deposits of community income made previously, it is impossible to determine how much of the account's balance belongs to Mrs. Bynum's separate estate. Accordingly, we conclude, as did the trial judge, that item 36 is community property. See Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478 and Succession of Hemenway, supra.

And because of the discussed commingling of community revenues with separate income, which commenced in Mrs. Bynum's bank account shortly after it was opened in 1938, we must hold that the remaining items in dispute were also community as-

sets. Items 9 and 10 (bonds) apparently were bought in December, 1940 and paid for by a check in the amount of $11,200 drawn on that account. Items 26 through 32 (bonds) were purchased in March, 1946 with commingled funds from Mrs. Bynum's account. Likewise, item 35 (homestead stock) was acquired in April, 1948 by a check drawn on the same bank account.

With respect to defendants' alternative demand for restitution, the largest single claim therein is for $200,428.68 which arises out of the following situation: between October, 1928 and January, 1931 there were purchased at intervals, *in the name of Mrs. Bynum*, certain shares of stock in the Monroe Building and Loan Association of the value of $40,000 and in the Peoples Homestead and Savings Association in the amount of $135,000. From time to time the dividends therefrom, which totaled $25,428.68, were deposited in the community account of Mr. Bynum. Ultimately (but before Mrs. Bynum's account was opened), such shares were surrendered and the proceeds of the checks representing the redemption value were also deposited in Mr. Bynum's account. The defendants contend that Mr. Bynum's community and separate estates must make restitution to Mrs. Bynum's separate estate for the proceeds of the surrendered shares (which were in the wife's name) and for the mentioned dividends.

In making this contention defendants rely on our holding in Cameron v. Rowland, supra, that in view of the provisions of Act 120 of 1902 and Act 140 of 1932, shares of stock in a homestead or building and loan association standing in the name of the wife belong to her separate estate, regardless of the source of the funds used to purchase such shares; and that when they are "transformed" into other property the latter assumes the separate character that the shares had. Assuming arguendo (as is presently argued by defense counsel) that the same result is to be reached when the shares are surrendered and the proceeds thereof deposited in a bank account (the funds retaining the separate character had by the shares) we are unable to conclude that these defendants are entitled to the restitution demanded. In Cameron v. Rowland, supra, we also said that where such a situation existed and the wife's shares originally had been purchased with community funds the separate estate of the wife must account to the community for the amounts used in acquiring the stock. And the evidence before us is convincing that all of the shares in question were purchased with checks drawn against Mr. Bynum's community account, and that such checks totaled the same amount as that of the claim of defendants for the proceeds of the surrendered stock. Hence, the two claims offset each other.

But defendants urge that we cannot consider and decree such an indebtedness of Mrs. Bynum's separate estate to the community inasmuch as the plaintiffs did not assert it in their pleadings. Since defendants' alternative claim for restitution was made in the nature of a reconventional demand, plaintiffs were unable to plead the set off. Our law permits no replication. Besides, the same objection was raised in the Cameron case and we dismissed it by saying that in the "interests of equity and justice our decision in this matter requires such a decree [215 La. 177, 40 So.2d 21]."

As to defendants' claim respecting the dividends on the shares of stock we find that they accrued and were paid while Mr. Bynum was administering his wife's separate estate. Hence, such fruits became community property.

The remaining portions of the alternative demand for restitution likewise cannot succeed because, as the trial judge points out, the defendants have not borne the burden of establishing that the sums claimed are due by the community estate to the separate estate of Mrs. Bynum.

In a supplemental brief defendants finally complain of that part of the judgment which condemns them to pay all costs of the proceeding in the trial court, and they request that we order (under the authority of Code of Practice Article 908.3) a division of such costs equally between them and the plaintiffs. We are of the opinion that the request should be granted since, as above shown, the defendants successfully resisted the demands of plaintiffs as to ten of the disputed items which consisted of bonds of the value of $45,000.

In their answer to the appeal the plaintiffs have asked that we amend the judgment so as to allow them one-half of the "interest which accrued and was collected (or would have accrued and have been collected if the bonds had been held by the Executrix of the Estate of Mrs. Bella Conner Bynum) on the bonds which the lower court found to be community property", from the date of Mrs. Bynum's death to the date of judicial demand. Assuming, but not deciding, that such a claim is generally cognizable it cannot be allowed under the circumstances existing here. We find no evidence showing that any such interest had accrued or was collected. Rather, the record tends to warrant a contrary conclusion, it disclosing that all of the bonds in dispute were sold under an order of court in the succession of Mrs. Bynum.

For the reasons assigned the judgment appealed from is amended by ordering a division of the costs of the trial court equally between plaintiffs and defendants and, as thus amended, it is affirmed. Defendants shall pay the costs of this court.

SIMON, J., absent.

McCALEB, Justice.

In our original opinion in this matter, we approved the judgment of the trial court which sustained plaintiffs' demands as to 26 of 36 items of personal property listed in the Succession of Mrs. Mary Isabella Conner Bynum, and sold therein as her separate property, and rejected various claims in reconvention of the executrix of Mrs. Bynum's succession for restitution of separate funds totalling $364,306.43. A rehearing was granted as to all claims at issue and, to facilitate their orderly presentation and discussion, it is apt to restate the facts upon which the litigation is founded.

Charles E. Bynum, Sr., was married twice; the first time in 1882 and, of this union, one child was born, Miss Pearl Bynum. His wife died in 1885 and, in 1888, Mr. Bynum married Miss Mary Isabella Conner. A son, Charles Bynum, Jr., was born of this marriage in 1890. At various dates between 1899 and 1925 Mrs. Bynum acquired, through inheritance from her parents and her brother, an undivided ¼ interest in the estate of her parents consisting, in the main, of valuable revenue producing real property. The Conner estate was administered by Mr. Bynum as agent under written powers of attorney from the Conner heirs issued in 1925 and 1931. Meanwhile, Mr. Bynum acquired for the community by purchase an undivided ¼ interest in the Conner estate and, over the years until he became disabled, he collected the revenues of the estate in his capacity as coowner and as agent for the other coowners, depositing them in the Central Savings Bank and Trust Company of Monroe. After receipt of the funds, the bank would periodically issue checks to the coowners for their respective shares and Mr. Bynum would deposit the amounts due Mrs. Bynum and himself in the community bank account. In making these deposits, it was customary for Mr. Bynum to fill out two deposit slips, one showing the total deposit and a duplicate indicating the amount attributable to Mrs. Bynum's separate interest and the amount belonging to the community. Mrs. Bynum did not have a separate bank account prior to 1938. She opened a bank account in her own name in the early part of that year. At that time, Mr. Bynum returned to her some $52,000 representing her share of the income from the Conner estate, which had theretofore been deposited in the community account and, soon afterwards, Mrs. Bynum used the major part of this sum to purchase certain bonds which the trial judge found and are now admitted by plaintiffs to belong to her separate estate.

Charles Bynum, Jr., died in 1940 and each parent inherited from him about $21,000. At that time an inventory was taken of the contents of Mr. Bynum's bank box and eighteen of the government bonds payable to "Bearer", here in contest, are

listed on that inventory. There is no evidence as to the funds used to purchase these securities.

In December of 1940, Mr. and Mrs. Bynum purchased $24,000 of government bonds payable to "Bearer". Mrs. Bynum furnished $11,200 of the $26,000 representing the cost of the bonds and two of these bonds, one for $10,000 and one for $1,000, were deposited in her separate bank box.

On December 2, 1939, Mr. Bynum, then an elderly man, was struck by an automobile and injured. Infection set in resulting in the amputation of his leg. He also underwent operations for other ailments on July 7, 1940 and September 25, 1942 and the testimony indicates that, after the second operation, Mr. Bynum was mentally, as well as physically, incapable of managing his affairs.

Pearl Bynum died on June 25, 1945. She was a victim of epilepsy and was practically an invalid for a long time before her death. Her entire estate, which was in excess of $50,000, was bequeathed to Mrs. Bynum, her stepmother, who had cared for her during the last years of her life. Mr. Bynum appeared in the succession proceedings and waived his legitime but, in another suit before the district court, he was found to have been mentally incapable at the time he executed the waiver.

After Mr. Bynum became incapacitated, the community affairs were handled by Mrs. Bynum and various deposits were made of community funds in the separate account standing in her name, as well as in the community account. Withdrawals were also made in payment of household expenses and for other items which are not identified herein.

On July 24, 1948, Mrs. Bynum died leaving considerable separate and community property. Included on the succession inventory as part of Mrs. Bynum's separate estate was a balance of some $22,000 remaining in her bank account and 35 other items herein originally claimed by plaintiffs to be community property. The inventory of her separate property listed her ¼ interest in the Conner estate, the property inherited from her son and her stepdaughter and certain other real estate which had been donated to her by her husband.

Mr. Bynum died on March 7, 1950. Shortly after his succession was opened, the administrator of his estate, joined by his heirs, brought this suit.

As we have stated above, ten of the items originally claimed to belong to the community were found by the district judge to be the separate property of Mrs. Bynum and they no longer form any part of this contest as plaintiffs concede that these items were acquired with the paraphernal funds of Mrs. Bynum. Specifically, these items are Nos. 1, 2 and 3, consisting of three U. S. Bonds, totalling a face value of $30,000, which were pur-

chased on March 17, 1938 by Mrs. Bynum and paid for by check drawn on her account shortly after the initial deposits were made therein; Items Nos. 20 through 24, being five U. S. Government Bonds, totalling a face value of $5,000, purchased on December 19, 1942 and paid for with the proceeds of a $5,000 time certificate which had been purchased out of the initial funds deposited in Mrs. Bynum's account and Items Nos. 33 and 34, being two U. S. Savings "G" Bonds of a total face value of $10,000 purchased by Mrs. Bynum on March 29, 1943 from the proceeds of two $5,000 time certificates which had, in turn, been purchased from the initial funds deposited in Mrs. Bynum's account.

■ Thus, as recognized by the district judge and concurred in by the plaintiffs, it is seen that the account in Mrs. Bynum's name began as a separate account and contained only her separate funds, which were restored by her husband from the revenues he had collected as agent for the heirs of the Conner estate under powers of attorney given him by the heirs. Although Mr. Bynum's restoration of these funds to Mrs. Bynum's separate estate appears to plainly evidence his acknowledgment that he was not administering her paraphernal property, we must nevertheless decide this issue as plaintiffs vigorously assert that the separate estate of Mrs. Bynum was administered by Mr. Bynum until he became in-

capacitated and, therefore, the fruits therefrom fell into the community.

Article 2386 of the Civil Code, prior to its amendment by Act 286 of 1944, provided in substance that, when the paraphernal property of the wife is administered by the husband, or by him and the wife indifferently, the fruits thereof belong to the conjugal partnership.

The district judge found that Mrs. Bynum did not administer her own separate estate until after Mr. Bynum became disabled some time in 1940 and, on first hearing, we approved this ruling. In their application for a rehearing, defendants disputed the correctness of our holding, submitting that the fact that the husband becomes the wife's agent in handling her separate estate does not necessarily warrant the conclusion that he is its administrator. In support of this position, counsel cite the following cases: Miller v. Handy, 33 La.Ann. 160; Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; In re Leeds & Company, 49 La. Ann. 501, 21 So. 617; Colvin v. Johnston, 104 La. 655, 29 So. 274; Paul v. Arnoult, 164 La. 841, 114 So. 706 and Guss v. Mathews, 179 La. 1033, 155 So. 765.

These adjudications recognize that it is not incompatible with the wife's personal and sole administration of her paraphernal property to appoint her own husband as her agent for the purpose of that adminis-

tration. And it is tersely stated in Paul v. Arnoult, in holding, under the particular facts there presented, that the husband was merely acting as agent of his wife and, therefore, her separate property was not under his administration, that:

"* * * Such a case is presented only when the husband, with the consent of the wife, uses the separate estate of the wife *for his own benefit* or that of the community. It is not presented when the husband acts merely as the agent of his wife and *for her benefit*. Cf. Miller v. Handy, 33 La.Ann. 160, 164. So that the question is not so much by whom the property was physically managed as *for whose benefit* was it so managed." [164 La. 841, 114 So. 707.]

In the case at bar, we think it clear that Mr. Bynum at no time assumed the administration of his wife's separate estate. On the contrary, he was appointed under powers of attorney by all of the Conner heirs to represent them in the administration of the succession property. The undisputed evidence shows that Mr. Bynum never considered that he was acting other than as agent for his wife and exclusively for her benefit for, upon depositing her share of the revenues of the Conner estate in the community account, he meticulously earmarked on each duplicate deposit slip the part of the funds belonging to Mrs. Bynum. And this conception of the capacity in which he was acting is confirmed by Mr. Bynum's act in restoring to his wife in 1938 a sum exceeding $52,000 being the total of all revenues previously collected by him for her account.

■ Since it has been held and is now conceded by plaintiffs that the bank account in Mrs. Bynum's name was originally a separate bank account containing only paraphernal funds, the question arises as to the date when the status of the account was transformed into a community account by the indiscriminate commingling of the community funds with the separate funds deposited therein. We agree with plaintiffs that such a change in the status of the bank account resulted but it is of importance to a determination of the claims advanced by the litigants to fix with a fair degree of certainty the time when the transformation occurred.

After a careful reconsideration of the evidence, we deduce that the change brought about by the commingling of community with the separate funds was subsequent to December 24, 1940 when Mrs. Bynum's account was closed following her withdrawal of $11,200 on December 21, 1940, which she used to pay part of the purchase price of $24,000 of U. S. Bonds bought on the order of Mr. Bynum, $15,-324.60 of the purchase price having been furnished by him out of the community account. These were the two bonds compris-

ing items 9 and 10, one for $1,000 and one for $10,000, which Mrs. Bynum placed in her separate safety deposit box.

The trial judge, found, and we held on first hearing, that these two bonds belonged to the community as the separate account of Mrs. Bynum had been converted into a community account at the time of their purchase and, therefore, Mrs Bynum had used community funds for their acquisition.

 The evidence reveals that, on December 21, 1940, the date of the withdrawal of the $11,200, there had been deposited in the separate account of Mrs. Bynum, which was opened on January 17, 1938, a total of $66,808.89. Of this amount, it is established that $62,942.57 were the paraphernal funds of Mrs. Bynum. Plaintiffs claim that three items totalling $3,866.-02, which were placed into the account during that period, were community funds and that the deposit of those funds, with the separate funds, constituted commingling to such an extent that it changed the separate account into a community account.

A reconsideration of the matter has convinced us that the contention is not well founded. Initially, we believe that there is one item of $2,566.02 of the $3,866.02, said to be community, which appears to be the separate property of Mrs. Bynum. That deposit is described in the evidence as the New York Trust account but defendants

contend that it is the proceeds of one-half of a life insurance policy issued on the life of Charles E. Bynum, Jr., which was payable to Mr. and Mrs. Bynum as joint beneficiaries. The inventory filed in the Succession of Charles Bynum, Jr., on September 6, 1940, shows the existence of this policy and contains a notation that it is payable to the decedent's mother and father. The check for $2,566.02 was deposited in Mrs. Bynum's account on October 11, 1940 and this corresponds with a deposit of a like sum in Mr. Bynum's account on the same date. This chain of circumstances warrants, in our opinion, the inference that the $2,566.02 represented Mrs. Bynum's share of the avails of her son's life insurance policy and, thus, is sufficient to rebut the presumption that it belonged to the community.

 The only other deposits in Mrs. Bynum's account as of December 21, 1940, for which there is no probative evidence in rebuttal of the presumption of community, are several small checks totalling $1,300. Some of these checks were issued to Mr. Bynum by Mary Goss Charities, representing a monthly salary of $50 paid to him. These checks were endorsed to Mrs. Bynum and each month deposited by her and, on December 21, 1940, they totalled $550. The other small deposits, designated as "Ring", amounted to $750. But, even if these were community deposits, as the law presumes them to be, they only

amount to $1,300 and, when considered in comparison with the $66,808.49 of separate funds placed in the account of Mrs. Bynum during the period between the opening of the bank account and December 21, 1940, they are too inconsequential to establish such a commingling of funds to constitute a transformation of the paraphernal account into a community account. Succession of Land, 212 La. 103, 31 So.2d 609.

We reaffirm our previous ruling as to U. S. Government Bonds bearing Item Nos. 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 25. These bonds with the exception of Item No. 25, which was issued on March 15, 1935, were issued during the year 1936 and the record is barren of any proof of the date of their purchase or the amount and source of the funds used in their purchase. They were shown on the 1940 inventory of the contents of Mr. Bynum's bank box as belonging to him and they are legally presumed to be community property.

We also reinstate our former holding relative to seven U. S. Series "G" Savings Bonds of a total face value of $29,000, which comprise Items 26, 27, 28, 29, 30, 31 and 32. The bonds were purchased on March 21, 1946 by check drawn on Mrs. Bynum's account. The account, at that time, had unquestionably been converted into a community account by deposits of substantial sums attributable to the community which were commingled with the separate funds therein.

■ Furthermore, after August 1, 1944, which was the effective date of Act 286 of 1944, amending Article 2386 of the Civil Code, all deposits of income derived from Mrs. Bynum's paraphernal property were community property, as she did not file .. written instrument, as required by law, declaring that she reserved all such fruits for her own separate use and benefit.

■ However, although it was properly held that community funds were used in the purchase of these bonds, which became Mrs. Bynum's separate property as they were payable to her (see Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L.R. 2d 1216), we think the district judge erred in giving judgment to plaintiffs for one-half of the value of the bonds as of the date of the dissolution of the community. The judgment should have been for one-half of the community property employed in the purchase of the bonds, as held in Cameron v. Rowland, 215 La. 177, 40 So. 2d 1. While it is true that plaintiffs, in their answer to the appeal, are not complaining of the method used by the judge in fixing the amount due them, which is less than one-half of $29,000, this error should be corrected when the case is remanded to the trial court.

■ Respecting a remand of the case, it is appropriate to mention at this juncture

that we believe the nature of the case is such as to require the setting aside of the entire judgment below and the remanding of the matter to the trial court for the hearing of any additional evidence, which may have pertinence to the legal conclusions herein announced, and a balancing of accounts between the litigants, with respect to the various disputed claims and counter claims, so that whatever final judgment is rendered in favor of one side may be offset by whatever judgment is due the other.

■ We approve our previous holding as to Item No. 35 comprising $5,000 of building and loan association stock purchased April 14, 1948 by check on Mrs. Bynum's account. This stock was purchased in Mrs. Bynum's name but, since the purchase was made after the passage of Act 337 of 1938, this circumstance is of no importance and the presumption that it is a community purchase subsists. In addition, the funds used in the purchase belonged to the community for, at that time, Mrs. Bynum's account had long since become a community account. Plaintiffs are, therefore, entitled to be reimbursed for one-half of the value of this stock as of the date of the dissolution of the marriage.

■ With reference to Item No. 36, which is the bank account standing in Mrs. Bynum's name showing a final balance of $22,183.57, plaintiffs are entitled to

judgment for one-half of these funds as they belonged to the community. It appears from the record that, between December 24, 1940 (the date the account was closed by the withdrawal of all funds therefrom) and August 1, 1944, the effective date of Act 286 of 1944, there was deposited separate income in the account amounting to $17,671.25 and $14,074.81 from other sources which must be presumed to be community income. The indiscriminate commingling of these amounts on deposit, accompanied by numerous unexplained withdrawals, effected a transformation of the status of the bank account from that of a separate to a community account. After August 1, 1944, practically all of the deposits made in the account were community funds in view of Mrs. Bynum's failure to register her declaration that she was reserving her separate income for her separate use and benefit.

■ Nevertheless, this change in the legal status of the bank account does not relieve the community estate of the obligation of restoring to Mrs. Bynum's estate any paraphernal income which was deposited in her account after it became a community account, that is, during the period elapsing between December 24, 1940 and August 1, 1944. Under our law the wife, unlike the husband, has the absolute right to restitution for her paraphernal effects and their fruits, either delivered to her husband or delivered for use to the

community, save in instances governed by Article 2389 of the Civil Code, which is not applicable here. In the case of the husband, it is incumbent upon him to establish that his separate property has been employed to enhance the community at its dissolution. Munchow v. Munchow, 136 La. 753, 67 So. 819; Vicknair v. Terracina, 168 La. 417, 122 So. 276; Succession of Provost, 190 La. 30, 181 So. 802 and Abunza v. Olivier, 230 La. 445, 88 So.2d 815. But, in the case of the wife, the right to restitution is unqualified, Article 2391 of the Civil Code providing:

"The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed."

See also Rowley v. Rowley, 19 La. 557; Le Blanc v. Le Blanc, 20 La.Ann. 206; De Lesdernier v. De Lesdernier, 45 La.Ann. 1364, 14 So. 191; Succession of Meteye, 113 La. 1012, 37 So. 909; Jones v. Jones, 130 La. 438, 58 So. 140; Succession of McCloskey, 144 La. 438, 80 So. 650; Succession of McMahon, 176 La. 63, 145 So. 269 and Succession of Schnitter, 220 La. 323, 56 So.2d 563.

Accordingly, in the case at bar, defendants are entitled under their reconventional demand to offset against any monies finally held to be due by them to plaintiffs the total of all paraphernal funds of Mrs. Bynum deposited in her bank account between the periods December 24, 1940 until August 1, 1944, when all income thereafter derived from her paraphernal property fell into the community. In addition, they are entitled to recover the inheritances received by Mrs. Bynum which were deposited in her account after December 24, 1940.

The conclusion we reach herein disposes of a number of the claims in defendants' reconventional demand for $364,306.43. The largest part of this demand consists of a claim of $200,428.68 founded on the purchase and sale of certain homestead stock in Mrs. Bynum's name. Between October 16, 1928 and October 5, 1929, a purchase was made of 25 shares in the Monroe Building and Loan Association in Mrs. Bynum's name totalling $40,000. This stock, together with other shares in Mr. Bynum's name, was cancelled on December 22, 1937 and the proceeds obtained from the cancellation of the entire lot, amounting to $143,908.30, were deposited in the community account. A notation that $40,000 was derived from the stock in Mrs. Bynum's name was made on the deposit slip.

In like manner, between October 10, 1928 and January 12, 1931, $135,000 of Peoples Homestead and Savings Association stock was acquired in Mrs. Bynum's name. This stock was later cashed (between November 21, 1932 and July 28, 1937) and its proceeds deposited in the community account. In addition, dividends from the respective

homestead stocks standing in Mrs. Bynum's name, which totalled $25,428.68, were collected during the period of her ownership and deposited in the community bank account.

In our original opinion, we recognized that the homestead stock purchased in Mrs. Bynums' name was governed by the provisions of Act 120 of 1902 and Act 140 of 1932 and, therefore, became her separate property regardless of the source of the funds used to purchase the shares. But we also concluded, in keeping with the decision in Cameron v. Rowland, supra, that, inasmuch as these shares had been purchased with community funds, the separate estate of the wife was required to account to the community for the amounts used in acquiring the stock.

We adhere to this view and held that the monies deposited in the community account, representing the proceeds of the sale of the homestead stock, were justly due the community in recompense for the amount used to purchase the stock.

In this connection, we note that defendants, in their reconventional demand, are claiming restitution of $6,000 which was drawn by Mrs. Bynum from her bank account on February 19, 1938 and deposited in the community account. A notation on the check indicated that it was to cover Mrs. Bynum's pro rata loss on the homestead stock which had been purchased in her name and later sold. Defendants contend that, if the proceeds of the stock sale are held to be community, then Mrs. Bynum's $6,000 inured to the benefit of the community, for which her separate estate is entitled to reimbursement.

We find no merit in this contention. In conformity with our holding in Cameron v. Rowland, Mrs. Bynum was required to restore to the community all of the funds used to purchase the stock in her name. Hence, the payment of the $6,000, representing the difference in the amount paid and that received for the stock, simply discharged her obligation to return in full the community funds employed for its purchase.

However, a different result obtains with respect to defendants' demand for restoration of $25,428.68 in dividends paid on the homestead stock in the name of Mrs. Bynum, which were deposited in the community account and described on the deposit slips as attributable to this stock. Obviously, these dividends were fruits from Mrs. Bynum's paraphernal property and became part of her separate estate unless, as was found by the trial judge and on first hearing here, Mr. Bynum was administering his wife's paraphernal estate. But we are now convinced, for the reasons fully stated hereinabove, that Mr. Bynum simply acted as agent under powers of attorney from his wife and the other Conner

heirs in the administration of their estate and that he never administered the separate property of his wife for the benefit of himself or for the community. Actually, insofar as the homestead stock was concerned, it required no administration and Mr. Bynum's only acts in respect of the dividends were the deposits of the checks in the community bank account after Mrs. Bynum had endorsed them. See Lazard v. Commissioner of Internal Revenue, 5 Cir., 153 F.2d 348 and Trorlicht v. Collector of Revenue, La.App., 25 So.2d 547.

The foregoing conclusions herein either cover or effectually dispose of the balance of defendants' claims in reconvention [1] and it is therefore unnecessary to discuss them separately. These demands are:

(1) An alternative claim for $24,825.-65;

(2) $3,790 which was withdrawn in 1946 from Mrs. Bynum's account to pay part of a note executed by Mr. Bynum;

(3) $1,511 withdrawn from Mrs. Bynum's account in 1947 for repair of community property;

(4) $4,511 withdrawn from Mrs. Bynum's account in payment of certain medical expenses for Mr. Bynum;

1. There is one other demand that requires but little discussion. It is a claim for one-half of $28,228.65, being ½ of the balance in the bank account of Mr. Bynum as of July 24, 1948, the date of

(5) $1,032.30 received from the Succession of Pearl Bynum and deposited in Mrs. Bynum's bank account on August 23, 1947, and

(6) $470.14 deposited in Mrs. Bynum's bank account on January 9, 1941 and claimed to be part of the inheritance from her son.

For the foregoing reasons, the judgment appealed from is annulled and the case is remanded for further proceedings consistent with the views herein expressed. The costs of this appeal are to be paid by plaintiffs; taxation of other costs are deferred until final disposition of the case. The right is reserved to the opposing litigants to apply for a rehearing.

HAMITER, J., concurs in part and dissents in part, assigning written reasons.

HAMITER Justice (concurring in part and dissenting in part).

Since I am not convinced that error attended any of the reasons and conclusions enunciated in the opinion rendered on the original hearing, of which I was the author, I must and do adhere to those pronouncements.

On Further Application for Rehearing.

the dissolution of the community. Since plaintiffs show that this claim has been recognized in Mr. Bynum's succession, it is not recoverable in these proceedings.

PER CURIAM.

In the opinion which we handed down in this case on rehearing we made the following statement:

"Accordingly, in the case at bar, defendants are entitled under their reconventional demand to offset against any monies finally held to be due by them to plaintiffs the total of all paraphernal funds of Mrs. Bynum deposited in her bank account between the periods December 24, 1940 until August 1, 1944, when all income thereafter derived from her paraphernal property fell into the community. In addition, they are entitled to recover the inheritances received by Mrs. Bynum which were deposited in her account after December 24, 1940."

Although we did not explicitly say so in our opinion on rehearing, we, of course, intended to reserve to plaintiff the right to offset, as against the amount due Mrs. Bynum in restitution of her paraphernal funds, any amount or amounts withdrawn by her from her bank account which she used for her separate estate.

Both applications for a rehearing are refused.

HAMITER, Justice does not take part in the rendition of this PER CURIAM, he having dissented from the ruling to which it relates.