BREAUX, C. J.
Numa J. Aubry, plaintiff, asks to be recognized by the court’s decree as the owner of one half of the property belonging to the community dissolved by the death of his wife, and to be decreed usufructuary of the other half after a liquidation of her succession.
At his instance an inventory was made of the separate property of the deceased, consisting of real estate appraised at $3,000, and real property belonging to the community appraised at $1,800.
The inventory further sets forth that the-community owned one deposit in the Ger-mania Savings Bank amounting to $1,021.34, another to the sum of $17, and another to-the sum of $500.
At first plaintiff Aubry had applied to be-appointed administrator of the succession, on the ground that it owed debts. His application for administration was opposed by his-daughter Leonise, and other heirs of age, and this opposition resulted in plaintiff’s withdrawing his application, and no administrator was appointed.
Plaintiff and his late wife, Alice M. Met-eye, were married in 1872.
She died in January, 1903, leaving issue-of the marriage, seven children — five majors and two minors.
It is made to appear by the record that the late Mrs. Aubry received the real estate-before alluded to as hers, as a legacy from, the succession of the late Mrs. Ohazotte, burdened with certain debts amounting to $606.-07, besides the taxes for 1876.
With reference to this amount, plaintiff’s-contention is that it was paid from the community funds; and in this connection his- *1015 further contention is that he, as he avers, “at clivers times, expended from the community funds large sums and amounts upon and for the said separate property, for taxes, buildings, repairs, improvements, and necessary expenditures.”
The itemized account representing this asserted expenditure amounts to $2,077.22, including the $606.07 before mentioned, which he claims for the community.
In the course of the litigation a controversy arose between Leonise and plaintiff about an amount deposited in bank in her name, which each claimed — the plaintiff for the community, and Leonise as her own. This sum was carried on the inventory as belonging to it (the community).
It does not appear that this heir or any ■other of the heirs received notice to be present at the inventory, or that they were present.
Leonise held the passbook of the bank for the amount in question, or had it in charge.
Plaintiff, through counsel, filed a motion to make the bank a party, and to withhold the amount for account of the succession, which the court granted. This was very soon after followed by a rule on the part of the said daughter to set aside this motion, •on the ground that it was ex parte and improvident. The court rescinded its order, and plaintiff then took out a writ of injunction to have it retained in bank, where it is now, subject to the court's order. It remains that the question here is only one of practice, and involves only few cents of costs.
■In our view, the plaintiff had no right to the rule. The inventory had been made under his direction only. He was without authority to direct the notary to include this ■claim as belonging to the community, and thereafter obtain an ex parte order to have the fund withheld on the ground that it had, by the inventory, fallen into the community.
The heir in question had at least a prima facie right to this fund, which could not be interfered with by issuing an ex parte order to withhold the amount.
The contention of learned counsel for plaintiff is, on this point, that although she was a third party originally, as relates to the inventory, she became one inter partes, and bound by the fact that she had opposed her father’s application for the administration of the property carried on the inventory, without asserting her claim to any of it, and that, having treated the property in the inventory. as that of the succession, she is bound; that she did not timely speak and object.
In this heir’s opposition to the claim for administration there was no question raised in regard to the inventory. It is not shown that she knew that this amount was claimed by her father, and that she was informed of the expectation of her father in regard to the amount.
The proceedings contain no direct or indirect admission in regard to this fund. An heir who has not been notified of an inventory may oppose the petition for administration without cutting herself off from all possibility of claiming an amount carried on the inventory, for which she holds receipt as a depositor. Julie Derouin v. P. Segura, 5 La. Ann. 550.
Upon the theory that the heir was bound by the inventory, the plaintiff made the motion before mentioned, which was properly set aside at the instance of the daughter Leonise.
We may as well at this time more particularly dispose of the question of Leonise’s absolute right to this fund.
The late wife of plaintiff, mother of Leonise, the record informs us, was a good, industrious woman. Por many years her occupation was that of midwife, and had been from a date antedating her marriage some three or four years. She was frequently employed as such. She was respected and had *1017 the good will of many families in New Orleans in which she rendered services. She was frequently called away from home by those in need of her services, and in consequence found it convenient to give employment to her daughter, who was virtually the servant at home. She cooked, washed, sewed, answered the doorbell at night calling for her mother, and performing other household duties for the family. She was the only daughter at home. The other had joined one of the religious orders. The mother said to friends that she felt that she had greatly taxed the good will and industrious disposition of her daughter Leonise, and that she would endeavor to -compensate her for it when she became able.
The mother not only earned money by her professional services, but she received monthly rent from her separate property, which enabled her to support a large family, and for some time prior to her death pay her hardworking daughter for the useful work she performed as a helper at home. The weight of the testimony is on the mother’s side, for she had placed the amount in the hands of the daughter, and the witnesses sustain the contention that in thus doing she intended to pay the daughter for services. It was manual delivery for a consideration.
The father stoutly denies this claim of his daughter. He is not corroborated to any appreciable extent, while, on the other hand, the daughter’s testimony is amply sustained by the fact that the amount was deposited by her in her name, by the services shown to have been rendered, and by the testimony of a number of witnesses who swear most positively to facts showing that she is entitled to the amount.
Leonise testifies — and in her testimony she is well corroborated — that her mother was necessarily away from home a good part of the time; that' there were seven younger children living, other than herself, in the family; and that when her mother was away she took care of the children, and this from the time she was 14 years old until she, after her mother’s death, was forced by her father to leave home. She served the family in loco servi a period of about 14 years. Had the mother employed another servant, and had paid her, the father would have no cause of complaint. The brothers, who knew of the payment, who also are interested, do not complain. The father, who has remained silent these many years, has no good ground of objection.
There was no donation made. It was the payment- as when the master or mistress pays his or her servant. This is the phase put upon it by the brothers of Leonise of age, and by other witnesses, which the father, by his testimony alone, seeks to rebut.
He refers to an incident growing out of the deposit by him of the contents of a little bank box at home, after -the mother’s death, amounting to $17, with the rest of deposits. We cannot find that it has any special significance. It was the act of the father, over which Leonise had no control, and which cannot prejudice her claim to compensation sustained by the weight of the testimony. The father knew that the deposits were made in the way they were made by Leonise.
A significant fact we will state in passing from the consideration of this claim. Plaintiff, Aubry, testified that Leonise was not in the service of the family, but named others whom he said were servants. Two of the number named were called by defendant as witnesses, and testified that they had never been servants in the family, and that Leonise attended to the household duties whilst they had been visitors of the family.
This brings us to a consideration of the claim plaintiff sets up for investment made by him, as head of the community, for improvements made on the separate property of his wife.
He, it is fair to infer, did expend amounts for the improvement of the separate prop *1019 erty of his wife. It would be difficult to fix the amount. He presented a long account, to the correctness of which he has sworn. Some of the items represent an asserted expenditure for which no charge can be made against the succession. They are outlays which the occupant of the property should make. The property was in the hands of lessees, except one of the buildings, part of which the plaintiff occupied with his family.
The expenditures in question are such as a “lessee is bound to have made,” such as “clearing of wells and necessaries.” Civ. Code, art. 2718; Civ. Code, art. 2716.
The other items claimed on plaintiff’s account under this head are to some extent, at least, sustained by evidence, and, were it not that it appears that the claims of the succession of the wife about offset them, they would be allowed.
Plaintiff opposes these claims (that is, claims of the wife’s heirs for amounts expended by the mother during the community) on the ground that the wife retained the separate administration of her property, and that there.is no proof that her revenues were expended for the benefit of the community, or for the benefit of any one for which the community or the plaintiff can be held.
It is true, the wife was permitted to expend her revenues as she pleased, but it went toward supporting the family and educating the children, and part of it, in the nature of things, toward defraying expenditures for improving her separate property.
After these many years of silence and acquiescence, it would scarcely be just to deny to her succession all claims for these expenditures in a controversy in which the husband seeks credit for every amount he claims to have put in the community, in face of the fact that the weight of the testimony sets forth that his revenues were very limited, and that he in many things depended upon the industry of his wife; that he, a part of the time, must have had very little, if any, moneyed resources.
We think, clearly enough, it appears that these separate revenues of the wife were invested for the benefit of the community, as well as for her separate estate; and why, then, should not the succession have credit therefor? This claim weaves itself perforce into the business of the parties.
The following was decided:
“The community bears to the wife the relation of usufructuary to the owner.” Childers v. Johnson, 6 La. Ann. 634; Wimbish v. Gray, 10 Rob. 46.
This excludes the idea of benefit from the wife’s property; and, on the other hand, the husband may charge for every item of expenditure in the way of insurance and of maintaining the usefulness of the property by placing thereon needful improvements to that end. The plaintiff increased the value of the property of the wife very little, if at all.
The decision in Courrege v. Colgin, 51 La. Ann. 1070, 25 South. 942, cited by plaintiff, it seems to us, if it has any bearing, is favorable to the defense.
True, in that case the husband was shown to have had the administration of the property, and was therefore chargeable with the wife’s revenues which went into his hands. Here the contrary seems to have been conceded.
None the less, it would scarcely be just that the husband should benefit by improvements made through separate revenues of the wife.
The testimony shows that during 30 years of marriage the wife, and the mother of nine children (we have no difficulty in believing that she was a good midwife, as contended), was always energetic, and sought to properly rear her children; that, owing to the friendship of an old person (Mrs. Chazotte) for whom she had worked in her young days, she became the legatee of the properties she owned at her death, that yielded reve *1021 trues monthly. She was enabled during the •whole time to bring some amounts to the family.
The husband was frequently idle — indifferent to his credit in small matters, at least. His testimony, as a whole, and the only witness who sought to corroborate him, as against the directly opposing testimony of a number of other witnesses, has not impressed us as sufficient to sustain a claim of $2,077.22 which he sets up. The receipts he produces doubtless, on their faces, show the amounts paid. As between husband and wife, such receipts are not always conclusive evidence that the amount paid was earned by the husband, and not by the wife. Witnesses for the defense said that he sometimes paid out money of his wife, and took receipts in his own name.
Comparing the capacity of each for money earning, we are not inclined to the view that these receipts represent amounts to he charged by the community to the wife’s succession. The attempted corroboration of these •receipts, as representing an amount due to the community, must fall, in presence of the facts testified by a number of witnesses.
There is substantial proof enough that the plaintiff cannot he reasonably considered to have earned the amount he claims. There is substantial proof that the larger amount came from the wife’s side of the house, and circumstances point to the fact that it was usefully expended in defraying family expenses, and the strongest presumption is that it also went far toward paying all other expenses.
To illustrate: If, during a marriage of 30 years, the husband shows that he has earned a gross amount of, say, $10,000; the wife, more active and industrious, has earned a considerably larger amount. At the end of the fifteenth of the 30 years of marriage, improvements were made on the separate property of the wife, and the husband holds receipts for hills paid for them, which witnesses explain against his testimony, he cannot recover judgment for the amount which he says the improvements cost, or for the betterment of the property not shown.
The amounts claimed by the heirs of the wife as due by the community to them also hear the appearance of exaggeration. The claims of the parties will not be merged into a judgment, further than to hold, in view of the testimony, that one claim about offsets the other.
If any of plaintiff’s funds ever became mixed with hers, it was compensated, we think. The testimony shows that he kept a separate bank account, not suggestive of the mingling of funds.
The right of the survivor of the community on other points is fixed by the judgment of the district court — we think, correctly.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.