(103 So. 443)

No. 26219.

## Succession of SHARPE.

(March 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Evidence** ⟨⟩⟩461(1)—**Purpose of assignment of stock certificate by mother to daughter, properly shown.**

Purpose of assignment of stock certificate in blank by mother to daughter could be properly shown, there being nothing in Uniform Stock Transfer Act which prohibited showing of such purpose.

2. **Trusts** ⟨⟩⟩44(2)—**Evidence held to show purpose of assignment of stock was to transfer it in trust.**

Evidence *held* to show that mother's assignment of stock certificate to daughter was to transfer it in trust for distribution of proceeds after mother's death.

3. **Gifts** ⟨⟩⟩47(2)—**Donations; deposit in bank in name of decedent presumptively hers.**

Where deposit in bank was made in name of decedent, presumption was that deposit was hers, though her daughter was authorized to draw against it.

4. **Trusts** ⟨⟩⟩325—**Daughter not chargeable with sum drawn from mother's bank account during latter's life.**

Where mother's bank account was kept in her name with authority in daughter to draw against it, amounts drawn therefrom by daughter prior to mother's death, *held* inferably for her benefit and not chargeable to daughter.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

In the matter of the succession of Mrs. Ed. Sharpe. Suit by Louis W. Benson, as administrator, against Mrs. John G. Smith. Judgment for plaintiff, and defendant appeals. Judgment amended and as amended affirmed.

Frank S. Normann, of New Orleans, for appellant.

B. B. Howard and F. F. Teissier, both of New Orleans, for appellee.

OVERTON, J. Louis W. Benson, in his capacity as administrator of the succession of his mother, Mrs. Ed. Sharpe, instituted the present suit to recover from Mrs. John G. Smith, a daughter of Mrs. Sharpe, 10 shares of stock, issued by the Reliance Homestead Association, and delivered by it to Mrs. Sharpe; and for $3,000, which it is alleged belongs to the latter's succession, and which was illegally and unlawfully withdrawn by the defendant, Mrs. Smith, from the Citizens' Bank & Trust Company of Louisiana.

Defendant filed an answer to this demand. She avers that she is the owner of the stock, having acquired it from Mrs. Sharpe for a good and valuable consideration. She also avers that at one time there was a savings account in the Citizens' Bank & Trust Company in the names jointly of herself and her mother. She avers that this account at no time exceeded $513.13. She also avers that she drew nothing out of this account prior to the death of her mother, and that to the best of her information her mother drew nothing out of it; but avers that, after the latter's death, she paid out certain amounts for funeral expenses, doctor's bills, medicines, church services, and for a plot in the cemetery, which fully exhausted said savings account.

On the trial of the case it appeared that the decedent, Mrs. Sharpe, several years prior to her death, inherited $2,400 from her mother. It also appeared that, shortly after the death of her mother, Mrs. Sharpe went to live with one of her daughters, the defendant herein. While living with defendant, she invested $1,000 of the money inherited by her in the stock, now in contest, and some six months after this investment she assigned the stock in blank and delivered the certificate to defendant.

The position of plaintiff is that this assignment was made merely for convenience, with no intention on the part of Mrs. Sharpe of vesting title to the stock in defendant

personally, but that Mrs. Sharpe being an invalid, her intention was merely to assign the certificate in blank and to deliver it to defendant to be held in trust, so that in the event of her death the proceeds of the certificate could be distributed among her heirs without going to the expense of opening her succession, and if, during her illness, it should become necessary to raise money for her benefit, defendant would be in position to raise it for her.

[1] During the progress of the trial plaintiff undertook to show the purpose of the assignment, and defendant objected on the ground that its purpose could not be shown under the terms of the Uniform Stock Transfer Act, which is Act 180 of 1910. The trial judge overruled the objection, and, we think, correctly so, for we see nothing in the act that prohibits the showing of the purpose for which the assignment was made.

[2] The evidence adduced, in our opinion, shows that the purpose of the assignment was not to vest defendant personally with title to the stock, but to transfer it to her to be held in trust. This conclusion, we think, is supported and borne out by the following facts, to wit: While fully three years intervened between the assignment and the death of Mrs. Sharpe, and while the defendant testified that the stock was delivered to her immediately upon its assignment for services rendered by her to her mother, yet it appears that, during all of those three years, defendant did not present the stock for transfer on the books of the company. That she did not present the stock for transfer during the long period that intervened between the assignment and the death of her mother strongly indicates, we think, that the stock was not assigned to her personally, and that she realized this, and, during her mother's lifetime, acted accordingly. Moreover, during the period between the assignment and the death of her mother, when dividends on the stock were received, defendant cashed the dividend checks for her mother, and delivered the proceeds to her, retaining in no instance any part of them—a fact which seems to be inconsistent with defendant's present position that she was then the owner of the stock. In addition to the foregoing facts, it appears that Mrs. Sharpe, in a conversation with her sister, declared it to be her intention to put the stock in her daughter's name to avoid the expense of opening her succession. Moreover, the record discloses that after the death of Mrs. Sharpe, defendant stated to some of the heirs that all that prevented a division of the stock or its proceeds, at the time the statement was made, was the fact that a dividend would be declared in July, and that it would be to the interest of all not to divide the stock until the dividend should be paid—a statement which necessarily recognized that her coheirs had an interest in the stock, and that the stock was not hers personally. Moreover, when the inventory of Mrs. Sharpe's succession was taken, defendant asserted no claim of ownership to the stock, though she was questioned concerning it.

For the foregoing reasons we conclude that the stock was not transferred to defendant to be her property, but only to be held in trust, and that, under the circumstances, it should be delivered to the succession of Mrs. Sharpe to be administered according to law.

As we have observed, the administrator of the succession of Mrs. Sharpe also asks for judgment against defendant for $3,000, which he alleges belongs to the succession, and which he claims defendant unlawfully withdrew from the bank in which it was on deposit.

[3] The evidence shows that the only money in bank at the time of the death of Mrs. Sharpe to which she might have had a claim was $513.13. The evidence also shows that this account was kept in the name of Mrs.

Sharpe, with authority in her daughter to draw against it. As the deposit was made in the name of Mrs. Sharpe, the presumption is that the deposit was hers. 7 C. J. p. 641, § 325; Succession of Meteye, 113 La. 1012, 37 So. 909. Moreover, the evidence, as a whole, satisfies us that the deposit belonged to Mrs. Sharpe, and was a part of the money, with a little interest added, which she had inherited from her mother.

The record discloses that since the death of Mrs. Sharpe, the $513.13, mentioned above, has been credited with four small items of interest amounting to $7.99. It appears that defendant, since the death of her mother, has drawn the entire deposit, with the exception of $1.98, thus making her withdrawals $519.14. Of the amount so withdrawn, the trial court found, and we think correctly so, that defendant spent $318 for the funeral expenses of her mother, and for the expenses of the last illness. These expenditures the trial court allowed, and gave defendant credit therefor. No objection is made to their allowance in this court. In fact, the administrator has asked that the judgment be affirmed in this respect. These expenditures will therefore be allowed.

With respect to the remainder of the expenditures shown, while they were made in good faith, yet they are not such as are chargeable to the succession. These amount to $201.14. For them, judgment will have to be rendered against defendant.

[4] The trial court found as we have found, except that it has apparently charged defendant with an item of $16.68, drawn prior to the death of Mrs. Sharpe. There is no reason to say that the amount drawn prior to the death of Mrs. Sharpe was not drawn for her benefit. We think that the inference is that it was. Hence we think that defendant should not be charged with that amount. The judgment will have to be amended in that respect.

For the reasons assigned, the judgment ap-
pealed from is amended by reducing the sum for which it was rendered against defendant from $217.82 to $201.14, and, as thus amended, that it be affirmed; the costs of the appeal to be borne by the succession.